UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANGITA R. PATEL and RAJENDRA G. PATEL,<br><br>             Plaintiffs,<br><br>     v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., et al.,<br><br>             Defendants. | Case No.: 4:13-cv-1874 KAW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and CitiMortgage, Inc. ("CMI") (collectively, "Defendants") filed a motion to dismiss Plaintiffs Sangita and Rajendra Patel's First Amended Complaint on May 1, 2013. The motion was fully briefed, and a hearing was held on July 18, 2013. Michael Yesk appeared telephonically for Plaintiffs, and Claudia Lee Williams appeared in person for Defendants CitiMortgage and Mortgage Electronic Registration Systems. Robert Betuel Norum appeared telephonically for Defendant Northwest Trustee.

For the reasons explained below, Defendants' motion to dismiss is granted, and Plaintiffs are given leave to file a second amended complaint consistent with this order.

### I.     Factual Background

The following facts are contained in the complaint. On September 16, 2005, Plaintiffs recorded a Deed of Trust in the Alameda County Recorder's Office against 3578 Kirkcaldy Street in Pleasanton, California, ("the property") to secure a promissory note in favor of CitiMortgage, Inc.

(CMI) as "Lender." (Dkt # 18, Compl., Ex. A, ¶ 10.) The Deed of Trust (DOT) names Verdugo Trustee Service Corporation as trustee and Mortgage Electronic Registration System (MERS) as the "nominee" beneficiary. *Id.*

On or before October 1, 2005, CMI securitized the loan and sold the beneficial interest in the DOT, through Citigroup Global Markets Realty Corp., Inc. (CGMRC), to a mortgage-backed securities trust, the CMLTI 2005-8 Trust. *Id.* at ¶¶ 11, 23. Ultimately the mortgage loan was sold to U.S. Bank. *Id.* at ¶ 23. CMI was paid in full when it sold the loan, but it did not assign the beneficial interest in the loan to CGMRC. *Id.*

On August 7, 2012, MERS, as a "nominee" for CMI, issued an Assignment of the DOT that purports to assign to CMI all beneficial interest under the DOT. (Compl., ¶ 12, Ex. C.) Charles L. Edmonson signed the Assignment as MERS's Assistant Secretary, and MERS filed it with the Alameda County Recorder's Office on August 7, 2012. *Id.* Plaintiffs allege that Edmondson was a robo-signer, and was not authorized to assign any interest. *Id.*

On November 20, 2012,[1] CMI recorded a Substitution of Trustee with the Alameda County Recorder's Office, in which CMI purported to convey the beneficial interest in the Deed of Trust to Northwest Trustee Services, Inc. (Northwest) in place of Verdugo Trustee Service Corporation. (Compl., ¶ 13.) The assignment states that it was executed by Myriam C. Umana, as an "Authorized Representative" of CMI on November 9, 2012, and was notarized on the same day by Guillermina Ramos in Clark County, Nevada. *Id.*

Also on November 20, 2012, Northwest filed a Notice of Default and Election To Sell under the Deed of Trust with the Alameda County Recorder's Office. (Compl., ¶ 15.) On March 12, 2013, Northwest filed a Notice of Trustee's Sale, setting a sale date of April 3, 2013. (Compl., ¶ 16.) At the hearing the parties indicated that the April 3, 2013 sale had been cancelled and no trustee sale is currently scheduled for Plaintiffs' property.

Plaintiffs filed their original complaint in the Alameda County Superior Court on March 26, 2013. Defendants removed the action to this Court on April 24, 2013.

---

[1] The complaint, ¶s 13 and 14, erroneously refers to the Substitution of Trustee as being recorded on November 20, 2011.

Plaintiffs' complaint alleges the following causes of action: 1) breach of express agreements; 2) breach of implied agreements; 3) slander of title; 4) violation of California Civil Code Section 2923.5; 5) wrongful foreclosure; 6) violation of 18 U.S.C. Section 1962 ("RICO"); 7) violation of California Business and Professions Code Section 17200 *et seq.*; and 8) cancellation of instruments against all Defendants.  Defendants have jointly moved to dismiss the complaint and "each of its claims" pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Defs.' Mot. to Dismiss at 2.)

**II.    Motion to Dismiss**

   **A.    Legal Standard**

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957)). Claims based on fraud, including state-law causes of action, must also meet the additional requirements of Federal Rule 9(b), that the circumstances of the fraud be pleaded with particularity. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering a 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).

A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Th[is] plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

### B.     Analysis

Defendants contend that Plaintiffs': 1) breach of express and implied agreements claims fail because Defendants did not breach the Deed of Trust, and Plaintiffs lack standing to assert a breach of any pooling and servicing agreement; 2) slander of title claim fails because the publication of foreclosure notices is a privileged communication and Plaintiffs cannot show pecuniary loss; 3) claim for violation of California Civil Code Section 2923.5 fails because they complied with the statute; 4) wrongful foreclosure claim fails because the foreclosure was not illegal or fraudulent, and Plaintiffs have not tendered;  5) 18 U.S.C. Section 1962 ("RICO") claim fails because Plaintiffs cannot demonstrate that Defendants engaged in a pattern of racketeering activity; 6) UCL claim fails because Plaintiffs lack standing; and 7) the cancellation of instruments claim is in fact a remedy, not a claim.

#### 1.     Breach of Express Agreements

Defendants move to dismiss Plaintiffs' claim for breach of express agreements.  Plaintiffs claim that two agreements were breached: the Deed of Trust, to which they and Defendants are parties; and the Pooling and Servicing Agreements (PSA), to which Plaintiffs were not parties. (Compl. ¶ 20.)

Breach of an express agreement is a contract claim.  "Breach of contract is a state cause of action, and is therefore governed by California law." *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1189 (C.D. Cal. June 21, 2011); *Hummer v. EMC Mortg. Corp.*, No. CIV S–10–1690–FCD–CMK, 2011 WL 2079609, at *4, (E.D. Cal. May 24, 2011).  The essential elements of a contract claim are: (1) the existence of a valid contract between the parties, (2) plaintiffs'

performance or excuse for nonperformance, (3) defendants' unjustified or unexcused failure to perform, and (4) damages to plaintiffs caused by the breach. *Susilo*, 796 F. Supp. 2d at 1188, *citing Lortz v. Connell*, 273 Cal. App. 2d 286, 290 (1969).

### a. Breach of Pooling and Servicing Agreements

With regard to any alleged breach of a PSA, as they acknowledged at the hearing, Plaintiffs cannot meet the first element of a breach of contract claim because they are not parties to the agreements. *See Phong Tran v. Bank of America, N.A.*, No. 12–4507 PSG, 2013 WL 2368048 at *2-3 (N.D. Cal. May 29, 2013) (dismissing Plaintiff's breach of PSA claims without leave to amend because Plaintiff did not allege that he is a party to the PSA, only that he was harmed by Defendants' alleged violation of the PSA); *Kirk v. Wells Fargo Bank, N.A.*, No. C 12–05969 SI, 2013 WL 132519 at *3 (N.D. Cal. Jan. 9, 2013) (noting that "courts have held that neither the PSA nor [state law] confers standing on the homeowner" and finding that "any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, not to any particular parties"). As such, Plaintiffs cannot state a claim for breach of any PSA, and the claims for breach of the PSAs are dismissed with prejudice.

### b. Breach of the Deed of Trust

Plaintiffs allege that MERS, CitiMortgage, U.S. Bank, and Northwest Trustee Services breached the acceleration provisions of the DOT because "[n]either MERS nor CitiMortgage, nor U.S. Bank, nor Northwest Trustee Services had the power to assign the deed of trust, make a substitution of trustee, [or] file a notice of default or trustee sale." (Compl., ¶ 21.)

Plaintiffs allege that these actions in the foreclosure proceedings against them did not comply with the terms of Covenant 24 of the Deed of Trust. (Compl., ¶ 20.) In the complaint, Plaintiffs misstate Covenant 24 as dictating that "only the true lender or 'unknown' new beneficiary/note holder, or its duly authorized agent has the power and authority to appoint a successor Trustee," and that if the Lender invokes the power of sale, the Lender or Trustee must execute a written notice of default and election to sell, with the county in which the property is located. (Compl., ¶ 20.) This appears to be a recitation of California Civil Code Section 2924(a)(1), and does not match the provision in Plaintiffs' deed of trust, which is attached to their complaint as Exhibit A. In fact,

Covenant 24 in Plaintiffs' Deed of Trust states that "Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office for the Recorder of the county in which the Property is located." (Compl., ¶ 20, Ex. A.) Therefore, because these allegations do not refer to any term in the DOT, they fail to state a claim for breach of contract.

Plaintiffs' claim that the DOT was breached appears to rest on their allegation that CMI failed to make a valid assignment of their mortgage in October 2005, when it sold Plaintiffs' loan through securitization to CGMRC. (Compl., ¶ 23.) Plaintiffs allege that CMI was paid in full, but failed to validly assign the mortgage DOT to CGMRC. (Compl., at ¶ 24.) Plaintiffs assert that "no assignment ever took place, as verified from the official records of the Alameda County Recorder." *Id.* Since CGMRC was not properly assigned the DOT from CMI, it "could not, and did not, assign and transfer its interest in [the] subject mortgage to depositor CMLTI." *Id.*

Plaintiffs allege that at the time their mortgage was assigned to the trust, the chain of title was "irrevocably broken," and no party retained the authority of the lender to appoint a successor trustee. (Compl., ¶ 20.) In addition, Plaintiffs allege that MERS' rights as an initial beneficiary in the DOT ended once CMI sold the loan through securitization. Therefore, MERS lacked authority to assign the secured debt back to CMI in 2012, and CMI could not appoint Northwest Trustee through the 2012 Substitution of Trustee.

Thus, Plaintiffs allege that because the DOT provides that only the true Lender or beneficiary can appoint a successor trustee, and CMI and MERS were no longer the true lender or beneficiary, the Substitution of Trustee in favor of Northwest Trustee, and the Notice of Default and Notice of Trustee Sale filed by Northwest Trustee in 2012, were void. (Compl., ¶ 27.)

The three arguments for breach of the Deed of Trust can be summarized as follows: 1) the securitization in 2005, when CMI was paid for its interest in Plaintiffs' loan, yet did not record the assignment of the DOT to CGMRC, destroyed the chain of title so that no party now has the right to foreclose; 2) the securitization cut off MERS' interest in the loan, and it had no right to later assign the secured debt back to CMI; and 3) MERS' assignment was not only defective, but fraudulent (Compl., ¶ 26.)

As to the first argument, the transfer of the Note and the beneficial interest through the securitization process does not constitute a sale of the Property, and therefore, there is no requirement that it be recorded. *Kirk*, 2013 WL 132519, at *2. Further, theories that the mere process of securitization undermines the lender's right to foreclose on a property have been rejected by the courts. *McGough v. Wells Fargo Bank, N.A.*, C12-0050 TEH, 2012 WL 2277931, at *4 (N.D. Cal. June 18, 2012) (collecting cases). Moreover, the Deed of Trust specifically authorizes CMI to sell the Note and its beneficial interest without giving notice to Plaintiffs: "The Note or partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Compl., Ex. A, ¶ 20). Therefore, the allegations relating to the securitization process do not state a cognizable breach of contract claim.

Plaintiffs next argue that "MERS without any agency relationship and acting on its own, [and] does not have any standing and authority to assign a mortgage loan that it does not own." (Compl., ¶ 25.) Defendants argue that "MERS has authority to assign a deed of trust" and the Court agrees. (Motion to Dismiss at 5.) The courts in California have universally held that MERS, as nominee beneficiary, has the power to assign its interest under a deed of trust. *Herrera v. Nat. Mortg. Ass'n*, 205 Cal. App. 4th 1495, 1498 (2012). When Plaintiffs signed the Deed of Trust, it granted MERS such authority.

The third argument, that MERS acted "fraudulently" in assigning the secured debt back to CMI, seems to refer to their allegations that MERS used a robo-signer. (Compl., ¶ 26.) Robo-signing allegations must meet a heightened pleading standard because they are based in fraud. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (When a "claim is said to be 'grounded in fraud' . . . the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)" (citations omitted)). As noted above, Plaintiffs allege that Charles L. Edmonson, who signed the Assignment of DOT as MERS's Assistant Secretary, is a robo-signer who was "not authorized on behalf of the true beneficiary of Plaintiffs' Deed of Trust to assign any interest." (Compl. ¶ 12.) Therefore, Plaintiffs argue that the beneficial interest in the DOT was never properly assigned to CMI and therefore Defendants do not have authority to foreclose. *Id.*

These allegations are conclusory and do not meet the heightened particularity standard of Rule 9(b). *See Bascos v. Fed. Home Loan Mortgage Corp.*, CV 11-3968-JFW JCX, 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011) (Plaintiff's allegations regarding "robo-signing" are pled in a conclusory fashion without any factual support.) Plaintiffs' reference to an "Auditor's Report" performed on their mortgage does not provide the requisite particularity for their robo-signing allegations. *Id.* Plaintiffs allege that the auditor's report "uncovered variations of Charles L. Edmonson's purported hand signature . . . on other non-related recorded mortgage instruments." (Compl., ¶ 12.)  Even when taken as true, the fact that there are variations of Charles L. Edmonson's hand signature does not support an inference that he is a robo-signer. Plaintiffs' robo-signing allegations therefore fail to meet the standards of Federal Rule of Civil Procedure 9(b). At the hearing, Plaintiffs' counsel stated that MERS had refused to provide him with documents that would verify Charles L. Edmonson's identity. Like the above allegations, this does not support an inference that Charles L. Edmonson is a robo-signer.

To state a claim for breach of contract, Plaintiffs must also show that they performed or were excused from performing their obligations under the contract. *Phong Tran*, 2013 WL 2368048 at *2. As with the Plaintiff in *Tran*, another foreclosure case brought by Plaintiffs' counsel, Plaintiffs fail to allege that they have performed their obligations under the DOT or that they are excused from doing so. Specifically, Plaintiffs have failed to plead that they are not in default on their loan. At the July 18, 2013 hearing, Defense counsel confirmed that Plaintiffs are in default on their loan, which Plaintiffs' counsel did not deny. Granting leave to amend this cause of action would be futile since Plaintiffs cannot allege performance or excuse under the Deed of Trust. Plaintiffs' claim for breach of express agreements is therefore dismissed with prejudice.

**2. Breach of Implied Agreements**

Plaintiffs' allegations for breach of implied agreements appear to be restated claims for breach of PSAs. *See* Compl., ¶ 40, "MERS, CMI and US Bank and Northwest Trustee Services violated the PSAs for the securitized trust including the CMLTI 2005-8 Trust by failing to record the assignments of the DOT in violation of the PSA." As noted above, Plaintiffs lack standing to assert breach of any PSA because they are neither a party to, nor third party beneficiary of, the agreement. *See Ganesan v.*

8

*GMAC Mortgage, LLC*, C 12-1935 MEJ, 2012 WL 4901440, at *4 (N.D. Cal. Oct. 15, 2012) ("[T]o the extent Plaintiff bases her claim on the theory that Defendants allegedly failed to comply with the terms of a Pooling and Servicing Agreement ("PSA"), the Court notes that she lacks standing to do so because she is neither a party to, nor a third party beneficiary of, that agreement."). Plaintiffs' claims for breach of implied agreements are therefore dismissed with prejudice.

### 3.  Slander of Title

The slander of title claim is predicated on the same allegations as the breach of contract claims. Plaintiffs allege that since no Defendant was a beneficiary or trustee of the deed of trust as of November 20, 2012,[2] due to the breaking of the chain of title through the securitization process and MERS' use of a robo-signer, the recordation of the notice of default and notice of trustee sale against their property was invalid. (Compl., ¶¶ 47-48.) Plaintiffs further allege that Defendants acted with malice and reckless disregard for the truth in recording this "invalid" notice of default. (Compl., ¶ 48.)

To allege slander of title in California, the Plaintiff must establish: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." *Ogilvie v. Select Portfolio Servicing*, 12-CV-001654-DMR, 2012 WL 4891583, at *2 (N.D. Cal. Oct. 12, 2012) (citing *Manhattan Loft, LLC v. Mercury Liquors, Inc.,* 173 Cal. App. 4th 1040, 1051 (2009)).

Defendants argue that Plaintiffs have not sufficiently pled the second element, that is, that the publication was done "without privilege or justification." A privileged broadcast is one made: "(c) in a communication, without malice, to a person interested therein, (1) by one who is also interested." Cal. Civ. Code § 47(c)(1). Absent allegations of malice, the recording of a foreclosure notice is indeed privileged. *See* Cal. Civ. Code § 47(c)(1); *Ogilvie v. Select Portfolio Servicing*, 12-CV-001654-DMR, 2012 WL 3010986, at *4 (N.D. Cal. July 23, 2012) (citing Cal. Civ. Code § 47(c)(1), Cal. Civ. Code § 2924(d) for the proposition that "[n]on-judicial foreclosure documents are subject to this privilege"). Malice is found when the defendant was either "motivated by hatred or ill will

---

[2] Plaintiffs erroneously assert that the Notice of Default was recorded in 2011, when in fact it was recorded in 2012.

9

towards the plaintiff," or "lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 336 (2008). Here, Plaintiffs allege that Defendants acted in reckless disregard for the truth by recording the notice of default, because Defendants knew they did not have a valid interest in the Note and Deed of Trust, due to the broken chain of title in the securitization process, MERS' lack of authority to assign the DOT in favor of CMI, the robo-signing discussed above, and the resulting alleged breach of the DOT and a PSA.

For the reasons explained above, the securitization process did not break the chain of title; MERs does have authority to assign the DOT in favor of CMI; Plaintiffs have failed to plead breach of the DOT and do not have standing to assert a breach of any PSA; and the robo-signing allegations have not been properly pled. *See Ogilvie*, 2012 WL 3010986, at *4 ("Plaintiff alleges that Defendants acted in malice and reckless disregard for the truth when they formulated false documents. . . . This allegation is conclusory; the mere 'formulation of false documents' is inadequate to plead malice."). Indeed, some courts in this district have found the "use of a robo-signer is insufficient to establish malice." *Nguyen*, 2012 WL 4942816, at *4 (citing *Ogilvie*, 2012 WL 3010986, at *4 (N.D. Cal. July 23, 2012)).

While other courts have found that knowledge of falsity of signatures is sufficient to plead malice, and under that standard, Plaintiffs may be able to plead malice through amended robo-signing allegations, Plaintiffs have still failed to plead facts to support pecuniary loss. *See Mena v. JP Morgan Chase Bank, N.A.*, 12-1257 PSG, 2013 WL 150716, at *4 (N.D. Cal. Jan. 14, 2013) (dismissing claim for slander of title that failed to allege pecuniary loss--though knowledge of falsity of signatures was sufficient to plead malice.) As with the Plaintiff in *Mena*, Plaintiffs, here, have failed to allege pecuniary loss beyond a detrimental impact on the vendibility of Plaintiffs' property, making it necessary for Plaintiffs' to retain attorneys to bring this action. (Compl., ¶¶ 74-75.)

"[I]n an action for slander of title fees incurred to quiet title are recoverable [but] fees incurred prosecuting the slander of title are not." *Id.* at *4, (citing *Ryan v. Editions Ltd. W., Inc.*, No. C–06–4812–PVT, 2007 WL 4577867, at * 13 n. 13 (N.D. Cal. Dec.27, 2007) (not reported in F. Supp. 2d)). Because the alleged monetary loss is limited to attorneys' fees and costs for pursuing the instant

slander of title action, Plaintiffs have failed to plead facts establishing pecuniary harm, and their claim for slander of title is dismissed with leave to amend.

### 4. Violation of California Civil Code § 2923.5

California Civil Code Section 2923.5 governs the notice requirements for initiating non-judicial foreclosure. California Civil Code Section 2923.5(a)(1) provides that "[a] mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days *after* initial contact is made as required by paragraph (2) or 30 days *after* satisfying the due diligence requirements as described in subdivision (g)." Cal. Civ. Code § 2923.5(a)(1) (emphasis added). Under paragraph (2), "[a] mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." *Id.* § 2923.5(a)(2). Under subdivision (g), "[a] notice of default may be filed . . . when a mortgagee, beneficiary, or authorized agent has *not* contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent." *Id.* § 2923.5(g) (emphasis added). However, if a mortgagee, beneficiary, or authorized agent fails to comply with § 2923.5, "then there is no valid notice of default and, without a valid notice of default, a foreclosure sale cannot proceed." *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 976 (N.D. Cal. 2012) (citing *Mabry v. Superior Court,* 185 Cal. App. 4th 208, 223, (2010)). The only remedy for a violation of this section is "to postpone the sale until there has been compliance with section 2923.5." *Id.* (citing Cal. Civ. Code § 2924g, subdivision (c)(1)(A)).

Plaintiffs do not allege that they were never contacted by Defendants. Rather, they allege that since no Defendant was the Lender or legal agent or successor in interest to the Lender, no Defendant could have complied with the notice requirement. (Compl., ¶ 82.) The Court has already explained why Plaintiffs' allegations regarding the securitization process and MERS lack of authority fail to state a claim upon which relief can be granted.

The only other basis Plaintiffs provide for violation of the notice requirement is that the Declaration was signed by a "robo-signer with no personal knowledge of the facts pertaining to the

beneficial interest of Plaintiffs' Deed of Trust," and therefore there was "no true statement" of notice in the Declaration. *Id.* As noted above, fraud allegations based on robo-signing must comply with Rule 9(b). Plaintiffs' robo-signing allegations are conclusory and fail to support a claim for violation of Section 2923.5. *Cf. Barrionuevo*, 885 F. Supp. 2d at 976 (accepting Plaintiffs' allegations that a declaration was false because Defendants never contacted Plaintiffs to discuss their default on the loan before having the Notice of Default recorded). Therefore, the Section 2923.5 claim is dismissed with leave to amend.

### 5. Wrongful Foreclosure

Wrongful foreclosure is an action in equity, in which a plaintiff seeks to set aside an "illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust," or prevent such a sale from occurring. *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011). To state a cause of action for wrongful foreclosure, Plaintiffs must plead that: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgager) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Id*. Plaintiffs must also demonstrate prejudice or harm, and, depending on whether they are challenging a sale or seeking to prevent a pending sale, may be required to tender payment of the debt. *See Mena*, 2012 WL 3987475, at *5.

Defendants argue that the wrongful foreclosure cause of action should be dismissed because Plaintiffs have not alleged any violation of California's non-judicial foreclosure statute, Defendants' securitization of the loan does not undermine the Defendants' ability to foreclose, Plaintiffs suffered no prejudice from any wrongdoing in the foreclosure process, and Plaintiff failed to tender the full amount of the debt. (Def.'s Mot. to Dismiss at 11.)

#### a. Illegal/ Fraudulent Sale

The complaint alleges several theories for illegal and fraudulent sale of their property, all of which have been asserted and rejected above. First, Plaintiffs reassert that Defendants violated

section 2923.5's notice requirements, stating that they could not be met because no Defendant was the current beneficiary of the Deed of Trust. (Compl., ¶ 85.) As discussed above, Plaintiffs have failed to show that the notice requirements were not met. Second, Plaintiffs allege that after the securitization of their loan, CMI retained "at most servicing rights" and therefore CMI could not assign a new trustee under the deed. (Compl., ¶ 86.) As a result, Plaintiffs allege that Defendant Northwest is not the correct party to initiate a foreclosure. (Compl., ¶¶ 91, 95.) Plaintiffs cite *Gomes v. Countrywide Home Loans, Inc.* for the proposition that a borrower may challenge an impending non-judicial foreclosure by asserting a "specific factual basis . . . that the foreclosure was not initiated by the correct party." *See Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1156 (2011). However, Plaintiffs have not asserted a specific factual basis for concluding that the wrong party initiated the foreclosure proceeding. At the motion hearing, Plaintiffs conceded that the only alleged impropriety specific to this case is MERS's purported use of a robo-signer. Because Plaintiffs have failed to plead robo-signing with specificity, they have not pled the element of illegal, fraudulent or willfully oppressive sale.

### b. Prejudice

Further, Plaintiffs have not sufficiently pled the prejudice or harm requirement of a wrongful foreclosure claim. "Irregularities in a nonjudicial foreclosure sale may be grounds for setting aside the sale if the irregularities are prejudicial to the party challenging the sale. Thus, the party attacking the sale must allege that they were prejudiced or harmed by the violation." *Natividad v. Wells Fargo Bank, N.A.*, 2013 WL 2299601, at *16 (N.D. Cal. May 24, 2013), citing *Aguiar v. Wells Fargo Bank, N.A.*, 2012 WL 5915124, at *5 (N.D. Cal. Nov. 26, 2012).

To demonstrate prejudice, Plaintiffs must show that the foreclosure proceedings would have been averted but for the legal deficiencies. *Christiansen*, 2012 WL 4716077, at *7, citing *Reynoso v. Paul Fin.*, LLC, 2009 WL 3833298, at *4 (N.D. Cal. Nov. 16, 2009); *see also Ghuman v. Wells Fargo Bank, N.A.*, No. 1:12–CV–00902–AWI–BAM, 2012 WL 2263276, at *5 (E.D. Cal. Jun. 15, 2012) ("Plaintiffs would be hard pressed to show any conceivable prejudice, given Plaintiffs have offered no facts to suggest the substitution of [trustee] (or the allegedly improper recording thereof) adversely affected their ability to pay their debt or cure their default."); *Permito v. Wells Fargo*

*Bank*, N.A., C-12-00545 YGR, 2012 WL 1380322, at *6 (N.D. Cal. Apr. 20, 2012) ("for a foreclosure to be 'wrongful,' Plaintiff also must allege that no entity had the right to foreclose upon her, not simply that the wrong entity foreclosed upon her"). Plaintiffs allege that the "entity that initiated the foreclosure lacked the power to foreclose and therefore had no legal authority to foreclose upon the property." (Compl., ¶ 90.) But Plaintiffs do not allege that entity that could foreclose on them—that is, that they are not in default on their mortgage—and at the motion hearing, Plaintiffs' counsel conceded that they would be unable to do so. This cause of action is therefore dismissed without leave to amend.

### 6. RICO

Plaintiffs' sixth cause of action is for violation of the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. Section 1962(c) imposes civil liability on persons and organizations engaged in a "pattern of racketeering activity." Racketeering activity is defined to include a number of generically specified criminal acts, as well as the commission of one of a number of listed predicate offenses. *Zacharias v. JP Morgan Chase Bank, N.A.*, 12-06525 SC, 2013 WL 588757, at *3 (N.D. Cal. Feb. 13, 2013) (citing 18 U.S.C. § 1961(1)). The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).

The Ninth Circuit has applied the particularity requirements of Federal Rule of Civil Procedure 9(b) to RICO claims. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (citing *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392–93 (9th Cir. 1988)). Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *Id.* (citing *Schreiber Distrib. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir.1986)).

Plaintiffs allege that "Defendants intentionally participated in a scheme to defraud *everyone*" by "sending the fraudulent affidavits, assignments and pleadings to the clerks of court, judges, attorneys, and defendants in foreclosure cases." (Compl. ¶ 101 (emphasis added)). Plaintiffs allege that the predicate acts of fraud are: "[b]ringing suit on behalf of entities which were not the real

parties in interest," "[a]ctively concealing the parties' lack of standing in their standard documents for foreclosure," "drafting of the fraudulent affidavits and documents and the subsequent execution of the documents . . . and the filing of fraudulent and forged affidavits as to loan ownership." (Compl., ¶ 100.) Plaintiffs' attorney brought a nearly identical RICO claim in a recent case in this Court. *See Zacharias v. JP Morgan Chase Bank, N.A.*, 12-06525 SC, 2013 WL 588757, at *3 (N.D. Cal. Feb. 13, 2013). Judge Conti wrote:

> This claim is far from plausible. . . . Plaintiff has failed to allege facts to support the contention that Defendants lack standing to foreclose on Plaintiff's property. Nor has she pled any facts to support her broad and sweeping contention that Defendants defrauded "everyone" by falsely claiming ownership of any number of other loans. Further, Plaintiff has failed to plausibly allege racketeering activity distinct from the alleged RICO enterprise. . . . In short, Plaintiff's RICO claim appears to be nothing more than conclusory allegations punctuated by threadbare recitals of the elements of a RICO cause of action.

The Court dismissed the cause of action with prejudice. *Id. See also Hoang v. JPMorgan Chase Bank, N.A.*, 5:13-CV-00582 EJD, 2013 WL 1436125 (N.D. Cal. Apr. 9, 2013) (holding that Plaintiffs "have fallen far short of the Rule 9(b) pleading standard which applies to a RICO claim" and dismissing the cause of action with prejudice). *See also Phong Tran*, 2013 WL 2368048, at *4-6 (N.D. Cal. May 29, 2013) (dismissing similar RICO claim pled by Plaintiffs' counsel without leave to amend). For the reasons explained in *Zacharias*, the Court finds that Plaintiffs' RICO claim is implausible, and dismisses it with prejudice.

**7. Violations of California Business and Professions Code Section 17200 et seq.**

Plaintiffs' final cause of action is for violations of California's Unfair Competition Law, as codified in California Business and Professions Code Section 17200 et seq., which proscribes "unlawful, unfair or fraudulent" business acts and practices.

California's UCL prohibits acts or practices that are: 1) fraudulent; 2) unlawful; or 3) unfair. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).

As Plaintiffs note, Section 17200 is a derivative cause of action, and Plaintiffs' ability to pursue this cause of action depends on the success or failure of their substantive causes of action. (Compl., ¶ 121.) Since the Court has dismissed all of Plaintiffs' substantive claims, Plaintiffs' cause of action for violation of Section 17200 is dismissed with leave to amend pending their ability to allege a suitable underlying cause of action.

### 8. Cancellation of Instruments

Defendants argue in their motion to dismiss, and Plaintiffs concede in their opposition, that "cancellation of instruments" is a remedy, not a cause of action. Accordingly, this cause of action is dismissed with prejudice.

## IV. Conclusion

Defendants' motion to dismiss is granted. When a court dismisses a complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). For the reasons explained above, Plaintiffs are granted leave to amend only the following causes of action: slander of title, violation of California Civil Code § 2923.5, and California Business and Professions Code § 17200 et seq. Plaintiffs must file a second amended complaint within 30 days of the date of this order.

DATE: August 6, 2013

_____
KANDIS A. WESTMORE
UNITED STATES MAGISTRATE JUDGE